**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JOHN PINNOW**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW K. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LEONARD DEWITT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 15A01-1202-PC-63 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DEARBORN CIRCUIT COURT
The Honorable James D. Humphrey, Judge
The Honorable Kimberly A. Schmaltz, Magistrate
Cause No. 15C01-1006-PC-1

**August 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Leonard Dewitt appeals from the denial of his petition for post-conviction relief. Dewitt presents one issue for our review: Did the post-conviction court (the PCR court) properly deny Dewitt's petition for post-conviction relief?

We affirm.

On February 12, 2004, Dewitt was charged with Count I, dealing in methamphetamine, a class B felony; Count II, conspiracy to commit dealing in methamphetamine, a class B felony; Count III, possession of precursors, a class D felony; Count IV, maintaining a common nuisance, a class D felony; and Count V, possession of methamphetamine under three grams, a class D felony. On April 2, 2004, the State filed an habitual offender allegation, asserting that Dewitt had accumulated at least two prior, unrelated felony convictions. The State specifically identified such convictions as being a 1995 felony conviction for trafficking in a controlled substance within 1000 yards of a school; a 1993 felony conviction for cultivating marijuana for sale in an amount of five plants or more; and a 1981 felony conviction for burglary.[1]

On January 30, 2006, Dewitt filed a motion to dismiss the habitual offender allegation, asserting that his prior, unrelated felony convictions did not meet the statutory requirements to support such an allegation. On February 3, 2006, the State sought to amend the charging information to add an habitual substance offender allegation. That same day, Dewitt's trial counsel hand-delivered a letter to Dewitt in which trial counsel expressed his belief that because Dewitt's witnesses would likely refuse to testify it would be "futile" to go to trial. *Exhibit Volume* at 67. Trial counsel further informed Dewitt that the trial court was not likely

2

to grant his motion to dismiss the habitual offender allegation and thus, Dewitt's "exposure from going to trial, in terms of jail time, [was] essentially a life sentence . . . ."[2] *Id.*

Three days later, on February 6, 2006, before the trial court ruled upon Dewitt's motion to dismiss or the State's motion to amend, Dewitt entered into a plea agreement with the State. Under the terms of the plea agreement, Dewitt agreed to plead guilty to Count II, class B felony conspiracy to commit dealing in methamphetamine, and the State agreed to dismiss the remaining charges, including the habitual offender allegation. The plea agreement set forth the sentence to be imposed as twenty years, with ten years suspended to probation.[3]

At a sentencing hearing on March 3, 2006, the trial court accepted the plea agreement and sentenced Dewitt according to its terms. On February 5, 2009, the State filed a request for a probation violation hearing. At a hearing on September 2, 2009, Dewitt admitted that he violated his probation. The court ordered Dewitt to serve his ten-year suspended sentence in the Department of Correction.

On June 18, 2010, Dewitt, pro se, filed a petition for post-conviction relief. A public defender was ultimately appointed to represent Dewitt throughout the post-conviction proceedings. The State filed its response to Dewitt's petition for post-conviction relief as well as a motion for summary disposition on September 15, 2011. The PCR court denied the State's motion for summary disposition and held an evidentiary hearing on December 15,

---

[1] All prior felony convictions were in the State of Kentucky.
[2] Dewitt was forty-four years old at the time.
[3] Dewitt had rejected prior plea offers to plead guilty to a single class B felony because sentencing was left open to the trial court's discretion.

2011. Dewitt's trial counsel testified at the post-conviction hearing. On January 25, 2012, the PCR court denied Dewitt's petition for post-conviction relief. Dewitt now appeals.

Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Ben-Yisrayl v. State,* 738 N.E.2d 253 (Ind. 2000), *cert. denied* (2002); *Wieland v. State,* 848 N.E.2d 679 (Ind. Ct. App. 2006). The proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Ben-Yisrayl v. State,* 738 N.E.2d 253. The petitioner for post-conviction relief bears the burden of proving the grounds by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

When a petitioner appeals a denial of post-conviction relief, he appeals from a negative judgment. *Fisher v. State,* 878 N.E.2d 457 (Ind. Ct. App. 2007). The petitioner must establish that the evidence as a whole unmistakably and unerringly leads to a conclusion contrary to that of the PCR court. *Id.* We will disturb a PCR court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the PCR court has reached the opposite conclusion. *Wright v. State,* 881 N.E.2d 1018 (Ind. Ct. App. 2008). The PCR court is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State,* 888 N.E.2d 319 (Ind. Ct. App. 2008). We accept the PCR court's findings of fact unless they are clearly erroneous, and no deference is given to its conclusions of law. *Fisher v. State,* 878 N.E.2d 457.

Dewitt argues that his guilty plea was not knowingly, voluntarily, and intelligently made. Specifically, he maintains that he was "coerced and intimidated" into pleading guilty

by the filing of an invalid habitual offender charge. *Appellant's Brief* at 8. Dewitt notes that he rejected prior offers to plead guilty to a single class B felony with open sentencing. He asserts that he ultimately agreed to plead guilty to a class B felony and a fixed twenty-year sentence with ten years suspended after his attorney advised him that he would be making "a great mistake" if he took the matter to trial and that he risked "essentially a life sentence". *Exhibit Volume* at 67. Dewitt's trial counsel believed Dewitt faced a minimum fifty-year sentence, i.e., twenty years for a class B felony enhanced by thirty years for a habitual offender determination. In his petition for post-conviction relief, Dewitt maintains that he would not have pleaded guilty but for the fact that he believed he was facing a possible fifty-year sentence for an underlying class B felony conviction plus an habitual offender determination.

It is well settled that

> [a] plea bargain motivated by an improper threat is deemed illusory and a denial of substantive rights. *Champion v. State,* 478 N.E.2d 681, 683 (Ind. 1985) (citing *Gibson v. State,* 456 N.E.2d 1006, 1009 (Ind. 1983)). The State must possess, at the moment a guilty plea is entered, the power to carry out any threat that was a factor in obtaining the plea agreement. *Daniels v. State,* 531 N.E.2d 1173, 1174 (Ind. 1988). "'[A] threat by a prosecutor to do what the law will not permit, if it motivates a defendant ignorant of the impossibility, renders the plea involuntary.'" *Munger v. State,* 420 N.E.2d 1380, 1387 (Ind. Ct. App. 1981) (quoting *Lassiter v. Turner,* 423 F.2d 897, 900 (4th Cir. 1970), *cert. denied*).

*Roberts v. State*, 953 N.E.2d 559, 563 (Ind. Ct. App. 2011), *trans. denied*.

In *Nash v. State,* 429 N.E.2d 666, 672 (Ind. Ct. App. 1981), this court held that if the improper threat of an habitual offender sentence enhancement "played a significant part in the plea negotiations," then any resulting plea is illusory, even if that threat was not the

5

"main" motivation for the plea. Our Supreme Court later placed a higher burden upon defendants who are claiming that an improper punitive threat compelled their guilty plea before that plea may be set aside.

In *Segura v. State,* 749 N.E.2d 496 (Ind. 2001), the defendant pleaded guilty to dealing in cocaine and, in a subsequent post-conviction proceeding, sought to set aside that plea on the basis that his trial attorney had been ineffective for failing to advise him of the possibility of deportation if he pleaded guilty. With respect to a claim that a defendant has received incorrect advice as to penal consequences of a plea, the court stated:

> Whether viewed as ineffective assistance of counsel or an involuntary plea, the post-conviction court must resolve the factual issue of the materiality of the bad advice in the decision to plead, and post-conviction relief may be granted if the plea can be shown to have been influenced by counsel's error. However, if the post-conviction court finds that the petitioner would have pleaded guilty even if competently advised as to the penal consequences, the error in advice is immaterial to the decision to plead and there is no prejudice.

*Id.* at 504-05. The Court further held:

> We believe a showing of prejudice from incorrect advice as to the penal consequences is to be judged by an objective standard, i.e., there must be a showing of facts that support a reasonable probability that the hypothetical reasonable defendant would have elected to go to trial if properly advised . . . . [A] petitioner may be entitled to relief if there is an objectively credible factual and legal basis from which it may be concluded that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."
> 
>                            \* \* \*
> 
> [F]or claims relating to penal consequences, a petitioner must establish, by objective facts, circumstances that support the conclusion that counsel's errors in advice as to penal consequences were material to the decision to plead. Merely alleging that the petitioner would not have pleaded is insufficient. Rather, specific facts, in addition to the petitioner's conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea.

*Id.* (quoting *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)).

The PCR court concluded that "if there was an improper threat regarding the habitual offender charge, it was not material to Dewitt's decision to plead guilty . . . and that Dewitt has suffered no prejudice as he would have plead guilty even if he had been 'competently advised as to the penal consequences.'" *Appellant's Appendix* at 286. We agree.

Here, Dewitt's trial counsel testified at the PCR hearing that he was fully aware the trial court had not yet ruled on the motion to dismiss the habitual offender allegation when he recommended that Dewitt enter into a plea agreement with the State. Dewitt's trial counsel further testified that, regardless of the validity of the habitual offender allegation,[4] he would have recommended that Dewitt accept the plea deal because of Dewitt's "horrible criminal history."[5] *PCR Transcript* at 16. Dewitt's trial counsel noted that it was a close question whether Count I and Count II could be ordered consecutive to one another. Further, counsel explained that given his professional experience before Judge Humphrey, had Dewitt opted for a trial on the charges and lost, Dewitt "would have been lucky not to get twenty, suspend zero," especially given his criminal history. *Id.*

First, Dewitt made the decision to plead guilty prior to the trial court ruling on his motion to dismiss the habitual offender allegation. Further, in his argument, Dewitt fails to consider the impact of the State's request to file an habitual substance offender allegation, which, if proved, would have added an additional three to eight years to any sentence

---

[4] A cursory review of the habitual offender statute strongly indicates that Dewitt's prior felony convictions did not satisfy the requirements for a habitual offender determination.

[5] Indeed, the trial court was "reluctant" to accept Dewitt's guilty plea because of his "substantial" criminal history, which includes twenty-one adult convictions (three of which are for felony offenses). *Sentencing Hearing Transcript*, *Exhibit Volume* at 21.

imposed for a felony conviction. As noted by Dewitt's trial counsel, Dewitt was subject to possible consecutive sentences on Counts I and II. Also figuring into the calculus on whether to plead guilty was that Dewitt was offered a significantly reduced sentence. In trial counsel's experience before the trial court judge, Dewitt, if convicted after a trial, would have faced at least a fully executed twenty-year sentence. The plea agreement called for half that executed time. Thus, while the habitual offender allegation was part of the calculus, Dewitt has not established that but for being misinformed as to the validity of the habitual offender allegation and the possible enhancement, he would not have pleaded guilty. The plea agreement was highly beneficial to Dewitt, notwithstanding the possible invalidity of the habitual offender allegation.

Judgment affirmed.

BROWN, J., and DARDEN, Senior Judge, concur.